IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Michael Adrian Michaelides,
individually and on behalf of all
others similarly situated,

    Plaintiff,

vs.

Creditors Financial Group, LLC
C/o The Corporation Trust Incorporated
300 E. Lombard St.
Baltimore, MD 21202
Resident Agent

And

Kaylen Echols
3131 South Vaughn Way
Ste110
Aurora, Co 80014

    Defendants.

Case No. _____

JURY TRIAL DEMANDED

## JURISDICTION

1. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k (d).

2. This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") by these Defendants in their illegal efforts to collect a consumer debt.

3. Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

4. Plaintiff Michael Adrian Michaelides is a natural person who resides in the City of Woodbine, County of Howard, State of Maryland, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

5. Defendant Creditors Financial Group, LLC (hereinafter "Defendant Creditors") is a Colorado corporation and a collection agency operating from an address of 3131 South Vaughn Way, Ste. 110, Aurora, Co. 80014 and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

**6.** Defendant Kaylen Echols (hereinafter "Defendant Kaylen") is a natural person employed by Defendant Creditors as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a (6).

**7.** Defendant John Doe (hereinafter "Defendant Doe") is a natural person employed by Defendant Creditors as a collection agent and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a (6).

## FACTUAL ALLEGATIONS

8. On or around May, 2005, Plaintiff has reason to believe he incurred a financial obligation that was primarily for personal, family or household purposes, that allegedly went into default for late payment, and is therefore an alleged "debt" as that term is defined by 15 U.S.C. § 1692a (5), namely, a credit card with Bank of

America that at the time of the present complaint had a balance that was approximately $8,531.00, which was used and owed exclusively by Plaintiff for personal use.

9. Sometime in or around the beginning of 2008, the Plaintiff's alleged debt was consigned, placed or otherwise transferred to Defendants for collection from Plaintiff, when thereafter Plaintiff started receiving collection communications from Defendants in an attempt to collect this debt.

### *Call on August 5, 2008*

10. On or about August 5, 2008, Defendant Creditors collector Defendant Kaylen called Plaintiff's spouse's (Georgeann Michaelides) at her place of employment and a person who identified himself as Kaylen, spoke with the receptionist (Bridget) and requested to speak to Plaintiffs spouse.

11. The receptionist indicated Georgeann Michaelides was gone for the day. Defendant Kaylen opened the conversation by asking Bridget several questions as to whether she knew the Plaintiff at all on a personal level. Bridget advised Defendant Kaylen that she felt uncomfortable and terminated the phone call.

12. Bridget gave the message from Defendant Kaylen to Plaintiffs spouse the next day. Once home from work, she discussed what had occurred with her husband and asked for him to handle. Plaintiff's spouse was extremely upset, embarrassed and wanted to cry because of the nature of Defendant Kaylen's questioning of her co-worker.

13. This call on this occasion from Defendant Kaylen to Plaintiff spouse's co worker was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692b(1), 1692c(b), 1692d, 1692e(10), 1692e(11), 1692f, and 1692f(1), amongst others.

### *Call on August 7, 2008*

14. On or about August 7, 2008, a call was received by the Plaintiff from Defendant by a person who later was determined to be an individual named Kaylen. Defendant Kaylen requested to whom he was speaking to and where Plaintiff lived. Plaintiff requested the name of the caller. Defendant Kaylen advised Plaintiff not to worry about that and to just answer the questions. Plaintiff asked why he was calling and was told it was because he was not paying his bills. Plaintiff explained he was in the process of re-organizing his finances and that everything would be handled through his attorney. The Defendant Kaylen advised the Plaintiff that he had no attorney. Defendant Kaylen threatened to contact anyone and everyone that the Plaintiff was a dead beat and did not pay his bills. An exchange of insults occurred. Plaintiff concluded the call by stating he would be contacting his attorney and not to contact him again. Plaintiff was humiliated and terrified by whom the Defendant Kaylen might contact.

15. This call on this occasion from Defendant Kaylen to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c (a)(2),1692d, 1692d(6),1692e, 1692e(10), 1692e(11), 1692f, and 1692f(1), amongst others.

### *Call on August 8, 2008*

16. On or about August 8, 2008, between 8:00 am and 9:30 am, a call was received from Defendant Kaylen at Plaintiff's spouse's place of employment and a person who identified himself as Kaylen, spoke with the patient intake secretary (Denise). Defendant Kaylen requested that the Plaintiffs spouse call him immediately and advised Denise that the Plaintiffs spouse knew very well what he wanted to discuss. Plaintiffs spouse received the message from Denise and planned on calling after work because she was unable to take personal calls at work.

### *Second Call on August 8, 2008*

17. Later on August 8, 2008, a second call was received from Defendant Kaylen at Plaintiff's spouse's place of employment and a person who identified himself as Defendant Kaylen, spoke with the receptionist (Bridget). Before asking to speak to Plaintiffs spouse, Defendant Kaylen asked Bridget what Plaintiff's spouse profession was, if she was a physician and how long she worked there. Bridget transferred the call to Plaintiff's spouse and advised her Defendant Kaylen was starting to worry her and scared her.

18. Plaintiffs spouse answered the call and a conversation ensued wherein Defendant Kaylen explained that her husband owed an unnamed creditor several thousand dollars and she needed to make a payment. Plaintiffs spouse advised Defendant Kaylen she was not able to take personal calls at her job but would inform her husband. Defendant Kaylen then asked her if her husband still worked for the airlines and what she did for an occupation. She attempted to keep the

        conversation short and low key to avoid having her co-workers from overhearing. Defendant Kaylen persisted and wanted an answer as to when a payment would be made on this account. Plaintiffs spouse reiterated that she would advise her husband and not to call her at work.

19. When the conversation terminated, Plaintiff's spouses co-workers were staring at her. She immediately went to the ladies room in tears due to the publically humiliating phone call.

20. Plaintiff spouse subsequently exited out the back door at her employment and called Defendant Kaylen and implored Defendant Kaylen to cease all calls to her employment. Defendant Kaylen advised he did not care and he was going to call where ever he pleased and as many times as he pleased. Defendant Kaylen further stated if she would like to be served with papers at her job so everyone at her job will know she does not pay her bills. Plaintiff's spouse felt like taking her life after the conversation and could hardly work or concentrate the rest of the day.

21. This call on this occasion from Defendant Kaylen to Plaintiff spouse was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692b(2), 1692b(3), 1692c(a)(!)(3), 1692c(b), 1692e, 1692e(2), 1692e(5), 1692e(10), 1692(11),1692f, and 1692f(1), amongst others.

### Third Call on August 8, 2008

22. Later on August 8, 2008, Defendant Kaylen left a voice message at Plaintiffs spouse's employment stating it was important that he speak to the Plaintiff's

spouse's boss. Sam, the Plaintiffs spouse's boss and owner of the company took the phone call from Defendant Kaylen. Defendant Kaylen asked when the Plaintiffs spouse was hired and other related questions. Sam explained he was busy treating patients and would have to call him back.

23. Sam then told Plaintiffs spouse that Defendant Kaylen from Creditors Financial Group called, was very rude and demanding on the phone for information about her. Sam told Plaintiffs wife to handle this personally. Plaintiffs spouse was humiliated that her boss had to know about her personal financial problems.

24. This call on this occasion from Defendant to Plaintiff spouse was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692 b(2), 1692d, 1692e, 1692e(2), 1692e(10), 1692(11), 1692f, and 1692f(1), amongst others.

### *Forth Call on August 8, 2008*

25. Later on August 8, 2008, a call was received by Plaintiffs spouse from an unknown party named Defendant Doe allegedly employed with Defendant Creditors at her place of employment who requested on behalf of Defendant Kaylen the name of the Plaintiffs bankruptcy attorney. She stated not to ever call her again.

26. This call on this occasion from Defendant Doe to Plaintiff spouse was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692 b(1), 1692 b(3), 1692 c(3), 1692 c(b),1692d, 1692e, 1692e(2), 1692e(11), 1692f, and 1692f(1), amongst others.

### *Call on August 9, 2008*

27. At 11:00 am on a Saturday, Plaintiffs son answered a phone call at the family home that the Plaintiff was able to overhear the caller's loud voice demand to speak to Michael Michaelides.

28. The Plaintiff took the receiver from his son and asked person to identify himself. The caller identified himself as the Plaintiffs buddy Kaylen. Defendant Kaylen then inquired sarcastically "…sorry, I didn't wake you? ".

29. Plaintiff immediately went into another room for privacy. Defendant Kaylen then said to Plaintiff "When is it going to end?". Plaintiff instructed Defendant Kaylen was not to contact him and he would refer this mater to his attorney. Kaylen stated that "he (Plaintiff) could not afford an attorney and he needed to send $5,000.00 to make the phone calls stop.". Plaintiff replied that he was seeking to file bankruptcy and this debt would be handled through he courts.

30. Defendant Kaylen then asked "Who are Dawn and Jim Polk?" The Plaintiff identified these were his neighbors and asked Kaylen why he mentioned their names? Defendant Kaylen intimidated Plaintiff by advising that he should hold on while Defendant Kaylen would call these neighbors and tell them that he doesn't pay his bills.

31. Defendant then asked "Who is George Sweeney?". The Plaintiff stated it was his father-in-law and asked Defendant Kaylen why he asked? Defendant Kaylen threatened to call him and state the Plaintiff doesn't pay his bills.  Plaintiff advised

that his father-in-law had passed away. Defendant Kaylen responded by laughing and stated that "I guess I won't be calling him will I ? ".

32. The Plaintiff and Defendant Kaylen exchanged angry words. Plaintiff then stated he would provide the name of his attorney. Defendant Kaylen stated that the Plaintiff could not afford his home much less an attorney.

33. Plaintiff at the conclusion of this phone call felt humiliated and frustrated.

34. This call on this occasion from Defendant Kaylen to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(10), 1692911), 1692f, and 1692f(1), amongst others.

### *Respondeat Superior Liability*

35. The acts and omissions of Defendant Kaylen and the other debt collectors employed as agents by Defendant Creditors who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Creditors.

36. The acts and omissions by Defendant Kaylen and these other debt collectors were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Creditors in collecting consumer debts.

37. By committing these acts and omissions against Plaintiff, Defendant Kaylen and these other debt collectors were motivated to benefit their principal, Defendant Creditors

38.  Defendant Creditors is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by these individual Defendants and its collection employees, including but not limited to violations of the FDCPA, in their attempts to collect this debt from Plaintiff.

*Summary*

39. The above-detailed conduct by Defendants of harassing Plaintiff and his spouse in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above-mentioned provisions of the FDCPA.

40. Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of nausea, crying, hopelessness, anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions.

## TRIAL BY JURY

41. Plaintiff is entitled to and hereby respectfully demands a trial by jury.  US Const. amend. 7.  Fed.R.Civ.P. 38.

## CAUSES OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692 et seq.

42. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

43. The foregoing intentional and negligent acts and omissions of each and every Defendant constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

44. As a result of each and every Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against each and every Defendant and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against each and every Defendant and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against each and every Defendant and for Plaintiff; and

- for such other and further relief as may be just and proper.

-13-

                    Respectfully submitted,

Dated: September 29, 2008          **Grossbart, Portney and Rosenberg, P.A.**

                    <u>By:  **/s/Robert N. Grossbart**</u>
                    Robert N. Grossbart, Esq.
                    Attorney I.D.#04116
                    1 North Charles Street, Suite 1214
                    Baltimore, Maryland 21201
                    Telephone:  (410) 837-0590
                    Facsimile: (410) 837-0085
                    Robert@grossbartlaw.com
RNG/ZR                    **Attorney for Plaintiff**